IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Rick Dees | : | |
| | : | Case No. C-1-02-457 |
| Plaintiff | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING IN PART |
| Kenwood Dealer Group, Inc. *et al.* | : | AND DENYING IN PART |
| | : | MOTION FOR SUMMARY |
| Defendants | : | JUDGMENT |

This matter comes before the Court on Defendants' Motion for Summary Judgment (doc. #14).  Defendants contend that Plaintiff Rick Dees cannot establish that they failed to promote or constructively discharged him on the basis of his race.  For the reasons that follow, the motion is **GRANTED IN PART** and **DENIED IN PART**.  The motion is granted as it relates to Dees' constructive discharge claims, but denied as it relates to Dees' failure to promote claims.

I.      BACKGROUND

At all times relevant hereto, Plaintiff Rick Dees, an African-American, was employed as a car salesman at the Defendant Kings Dodge, Inc. dealership.  Kings Dodge is one of ten dealerships in the greater Cincinnati, Ohio area affiliated with Defendant Kenwood Dealer Group, Inc. ("Kenwood" or the "Kenwood Group").  Kenwood provides management services to the dealerships under its umbrella.  (Reichert Depo. at 8-10).  It provides a body shop for the use of all the dealerships, plus computer, advertising and accounting services for each dealership.  (Id. at 10, 13-15).  The Kenwood dealerships also share a benefits program.  (Id. at 16).

The same four individuals own Kenwood and each of the dealerships affiliated with Kenwood. (Id. at 8-9). Kenwood itself does not own the dealerships. (Id. at 8). Robert Reichert, one of the owners, is the president and general counsel of Kenwood and of each dealership. (Id. at 19; doc. #14, ex. B). The general managers of each dealership affiliated with Kenwood meet weekly. (Reichert Depo. at 20). Also, the dealerships provide sales reports to Kenwood on a regular basis. (Id. at 13-14).

The general managers of each dealership handled personnel matters at their respective dealerships at all times relevant to Dees' claims and up to November 2001. (Id. at 16).[1] Reichert testified that he does not approve the dealerships' hiring and promotion decisions. (Id. at 107-08; Doc. #14, ex. B). However, even prior to November 2001, Kenwood had some involvement in personnel decisions at the dealerships. Kenwood provided Kings Dodge and the other dealerships with a common Employee Handbook. (Reichert Depo. at 23-35). The Handbook contains a preference that dealerships hire from within and mandates that seniority be used as a tiebreaker when two candidates with equal qualifications compete for an open position at one of the dealerships. (Doc. #16, ex. 9 at 28).

Dees was hired at Kings Dodge in November 1999. (Dees Depo. at 36). A Kings Dodge sales manager invited Dees to apply for a sales position, even though the dealership had no openings, based on his contact with Dees at automotive dealership functions. (Dees Depo. at 34-36).[2] Dees was the top salesperson at Kings Dodge for the year 2000. (Wilson Depo. at 11).

---

[1] In November 2001, Kenwood hired Rachel Lemmel to handle all personnel matters for the dealerships. (Reichert Depo. at 16).

[2] Dees does not dispute that he made false statements on his employment application at the time he was hired. (Dees Depo. at 38-39, 43). These false statements came to light during

While employed by Kings Dodge, Dees applied for but did not receive several promotions both at Kings Dodge and at other dealerships affiliated with the Kenwood Group, including a position as finance and insurance ("F&I") manager at Kings Dodge in June 2000. (Dees Depo. at 43-50). Dees alleges he was denied these positions because of his race. It is undisputed that in the year 2000 none of the 88 managers in the affiliated Kenwood dealerships were black. (Doc. #16, Dees Decl. exs. 1, 2).

In his Complaint, Dees alleges that Defendants failed to promote him to multiple positions, but the only alleged discriminatory promotion decision now at issue in this suit is the F&I manager position awarded in June 2000.[3] The F&I manager position requires aptitude in sales and in administrative functions such as completing paperwork accurately. (Roesel Depo. at 11; Stancliffe Depo. at 10; Pittman Depo. at 7, 38-39). Mark Pittman, the general manager of Kings Dodge, and a partial owner of Kings Dodge and Kenwood, interviewed Dees along with two Caucasian employees, Karl Swartz and Rob Gilley, for the position. (Pittman Depo. at 50,

---

discovery in this case. Though the false statements are not directly relevant to any of the issues before the Court on this Motion for Summary Judgment, they may be relevant to the issues of damages at trial. See Wehr v. Ryan's Family Steak Houses, Inc., 49 F.3d 1150 (6th Cir. 1995).

[3] Dees also sought promotions to a new car sales manager position at Kings Dodge in August 2000 and an assistant manager position at Kings Dodge in September 2000. (Dees Depo. at 90-92, 124-132). These positions were awarded to Caucasian employees. Dees also alleges that he sought managerial positions at Northgate Lincoln-Mercury, Fairfield Lincoln-Mercury, and Saturn of Kings Automall, Inc. (Id. at 127-28). Dees does not know who was awarded the positions he sought at the other dealerships. (Id.).

Defendants moved for summary judgment with respect to each instance that Dees was denied a promotion as identified by Dees during discovery. Dees, therefore, had the burden to present "specific facts showing there is a genuine issue for trial" as to each instance. Fed. R. Civ. P. 56(e). Because Dees has presented specific facts regarding only the failure to promote him to the F&I manager position, he is deemed to have waived any argument that his claims are based on other promotions that he may have been denied.

176; Dees Depo. at 52). All three were employees at Kings Dodge. Gilley had the most seniority with five years experience, while Swartz had been hired only one month after Dees. (Dees Depo. at 52).

Pittman sent each of the applicants to training at an outside program administered by Richard Roesel. (Pittman Depo. at 21; Roesel Depo. at 4). Roesel administered a personality profile test to each of the applicants. (Roesel Depo. at 12). Dees scored the best as to the ability to make sales and generate income. (Id. at 21) Roesel told Dees that he scored best on the test. (Id.). However, Roesel testified during discovery that none of the applicants were qualified for the F&I position and that he had recommended that Pittman interview outside candidates. (Roesel Depo. at 12-14; Pittman Depo. at 51-53).

Pittman testified that it was "very close" at this point as to whether to promote Dees or Swartz and that he was leaning towards promoting Dees. (Pittman Depos. at 20, 22). However, Pittman gave the promotion to Swartz after talking to three other Kings Dodge managers who each recommended Swartz over Dees. (Id. at 30, 35-37). The other managers testified that they told Pittman that Dees was disliked by other salesmen, was not viewed as a team player, did not help with non-sales tasks that salespeople were sometimes asked to do, and had difficulty completing purchase contracts and the mathematical computations therein. (Id. at 35-37, 202-04; Wilson Depo. at 13-17, 32-35; Stancliffe Depo. at 63-65; doc. #14, Jackson Decl.).

Pittman also testified that he had his own suspicions about Dees' mathematical abilities at the time he made the F&I promotion decision, but that no customers or managers previously had complained about Dees in this regard. (Pittman Depo. at 11-12, 143-44). The alleged concerns stated by the Kings Dodge managers about Dees' math skills were not universal

4

throughout the Kenwood-affiliated dealerships. Mike Sunderman, who had managed Dees and Swartz at Kingswood Chrysler Plymouth for two years, offered a sworn statement that Dees always completed the mathematical portions of his paperwork without error. (Doc. #16, Sunderman Decl.). Sunderman also stated that Dees was well-regarded by other salespeople and managers and that he would have promoted Dees over Swartz to the F&I position. (Id.). Likewise, Ronald Liggett, a manager at another Kenwood dealership and a former Kings Dodge employee, stated that Dees was respected by his co-workers and viewed as a team player. (Doc. #16, Liggett Decl.).

Pittman testified that he decided to promote Swartz over Dees because Swartz had comparable sales skills, was more of a team player, and was more detail-oriented than Dees. (Pittman Depo. at 23, 158-59). Reichert testified that he had no control over the promotion decision. (Reichert Depo. at 44). Swartz was terminated from the F&I position for poor performance two months after he was promoted. (Stancliffe Depo. at 13-16).

Later, in September 2000, Dees was able to complete only one or two of four problems on a math test he was given in connection to his application for another promotion. (Dees Depo. at 97-105; Pittman Depo. at 83-86).

Dees resigned from Kings Dodge in July 2001. (Dees Depo. at 141-42, 146). Dees had received an offer of employment from Huntington Bank before resigning his employment at Kings Dodge. (Id. at 163). He alleges that he resigned because he was humiliated by the Defendants' failure to promote him. He had not been asked to resign. (Id. at 142).

On June 21, 2002, Dees filed a Complaint (doc. #1) against Kenwood and Kings Dodge alleging discrimination on the basis of race. After a period of discovery, Defendants filed the

instant Motion for Summary Judgment (doc. #14).  Defendants argue that Dees was not denied any position on the basis of his race.  They also argue that a mere failure to promote is insufficient to prove a constructive discharge claim.  Finally, Defendant Kenwood Group argues that it cannot be held liable under Title VII because it was not Dees' employer as a matter of law.

## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).

The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. Pro. 56(e).  The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249.  A genuine issue for trial exists when the evidence is not "so

one-sided that one party must prevail as a matter of law." Id. at 252.

## III. ANALYSIS

### A. A Factual Dispute Exists Whether Kenwood Was Dees' Employer

Preliminarily, Kenwood moves for summary judgment on the grounds that it is not a proper defendant because it cannot be held liable as Dees' employer under Title VII, 42 U.S.C. § 2000e *et seq*. Dees does not seek to impose liability on Kenwood as his direct employer; rather, he seeks to hold Kenwood liable under the theory that Kenwood and Kings Dodge are so interrelated that they constitute a "single employer" or an "integrated enterprise." Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 993-94 (6th Cir. 1997).[4]  The Sixth Circuit instructs that courts should look at the following four factors to determine whether to treat two entities as a single employer:

> (1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control.

Id. at 995.

Though none of the factors provided in Swallows is conclusive, "the central concern" of the single employer theory is "control over labor relations." Id. at 995.  Reichert testified that he was not involved with or consulted on the promotion decision.  However, Pittman, the Kings

---

[4] A non-direct employer can be held liable for discrimination in violation of Title VII under "joint employer" and agency theories as well.  Regarding the first theory, "courts consider whether one defendant has control over another company's employees sufficient to show that the two companies are acting as a 'joint employer' of those employees." Swallows, 128 F.3d at 993.  Regarding the second theory, courts examine "whether the person or entity who took the allegedly illegal employment action was acting as the agent of another company, which may then be held liable as the plaintiffs' employer." Id.  Only the "single employer" theory is at issue here.

Dodge general manager who made the decision to promote Swartz over Dees, is a part-owner and a vice-president of Kenwood. Also, Kenwood's Employee Handbook contains two provisions applicable to the F&I promotion decision – a preference that the dealerships hire from within and a requirement that seniority be used as a tiebreaker between equally qualified applicants for a promotion. A reasonable jury could conclude that Kenwood exercised at least some control over labor relations.

Turning to the first, second, and fourth factors, Kenwood provided a number of services to the Kings Dodge dealership including a body shop and technical, advertising, and accounting services. There was common management between the Kenwood Dealer Group and Kings Dodge because Reichert and the other officers of the Kenwood Dealer Group were also officers in the dealerships. As to the fourth factor, there was common ownership of Kenwood and Kings Dodge, but neither party submitted evidence on the critical issue as to whether either defendant was a "sham" company. Id. at 995 ("If neither of the entities is a sham then the fourth test is not met."). Examining the totality of the evidence presented, the Court holds that a reasonable jury could conclude that Kenwood and Kings Dodge operated as a single employer. Accordingly, Kenwood is not entitled to summary judgment on the basis that it was not Dees' employer for purposes of Title VII liability.

### B.   Failure to Promote Claims

Both Defendants move for summary judgment on Dees' failure to promote claims. Dees alleges that Defendants denied him the promotion to the F&I manager position in June 2000 on the basis of his race in violation of Title VII, 42 U.S.C. § 1981, and Ohio Revised Code chapter 4112. Title VII and Ohio Revised Code chapter 4112 both prohibit race discrimination in

employment and are analyzed under the same standards.  See Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 n.2 (6th Cir. 2000) (citing Plumbers and Steamfitters Jt. Apprenticeship Comm. v. Ohio Civil Rights Comm'n, 421 N.E.2d 128, 131 (Ohio 1981)).  Section 1981 prohibits racial discrimination in the making and enforcement of private contracts, and claims under § 1981 are likewise analyzed under the Title VII standards.  See Newman v. Federal Exp. Corp., 266 F.3d 401, 406 (6th Cir. 2001).

> A plaintiff may prove a *prima facie* case of race discrimination with either direct or indirect evidence of discrimination.  See Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (citing Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997)).  "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'"  Id. (quoting Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999)); see also Norbuta v. Loctite Corp., No. 98-4162, 1 Fed. Appx. 305, 2001 WL 45114, at *5 n.1 (6th Cir. Jan. 8, 2001) (noting that under Ohio law direct evidence obviates reliance on the McDonnell Douglas framework and refers to a method of proof whereby a plaintiff makes a *prima facie* case by presenting evidence "to show that the employer more likely than not was motivated by discriminatory intent").  On the other hand, indirect or circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred."  Wexler, 317 F.3d at 570.  "The direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both."  Kline, 128 F.3d at 348-49.

Plaintiff has not submitted any direct evidence of discrimination.[5] Therefore, the Court will examine whether Dees has put forward sufficient circumstantial evidence to prove discrimination. Dees must first establish a prima facie case. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). To prove a failure to promote claim, Dees must show (1) he is a member of a protected class, (2) he was qualified for the position he sought, (3) he was rejected, and (4) other persons with similar qualifications who were not members of the protected class received promotions. See Dews, 231 F.3d at 1020-21. Defendants do not explicitly contest that Dees can establish a prima facie case and, in any event, the Court finds that Dees has sufficient evidence to prove his prima facie case based on failure to promote. Dees is an African-American, he was objectively qualified for the F&I position he sought,[6] and he was denied the promotion to F&I manager in favor of a Caucasian with similar qualifications.

Because Dees has met his prima facie burden for purposes of this summary judgment motion, the Defendants then have a burden of production, but not persuasion, to articulate a

---

[5] Although Dees states in his brief that he is setting forth the McDonnell Douglas method of establishing a prima facie case by "direct evidence," (doc. #16 at 7), the test he sets forth is the method for proving a prima facie case with indirect, circumstantial proof.

[6] In an *en banc* decision, the Sixth Circuit recently clarified the method by which a plaintiff can satisfy the qualification prong. See Wexler, 317 F.3d at 574. Courts may not consider the employer's alleged nondiscriminatory reason for taking the adverse employment action when determining if the plaintiff was qualified for the position he sought. See id. Courts should consider a plaintiff's credible evidence that "his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." Id. at 576. Specifically, the courts' inquiry should focus on criteria "such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." Id. Dees has put forward evidence that he meets the objective criteria for the F&I position. Moreover, Pittman, the Kings Dodge decisionmaker, testified that he considered it a close call whether to promote Dees or Swartz prior to hearing the other managers state a strong preference that Swartz receive the promotion. (Pittman Depo. at 22).

legitimate, nondiscriminatory reason for not promoting Dees.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993).  Defendants have stated several interrelated reasons for the decision to promote Swartz over Dees, including the recommendation of three managers to promote Swartz, a belief that Dees was disliked by other salespeople and was not a team player, and a belief that Dees would have difficulty with the paperwork and mathematical aspects of the F&I manager position.

The burden then shifts back to Dees to establish that the Defendants' stated reasons are pretextual.  Dees must establish that the Defendants' stated reasons (1) had no basis in fact, (2) did not actually motivate the Defendants' challenged conduct, or (3) were insufficient to warrant the challenged conduct.  See Dews, 231 F.3d at 1021.  Dees argues that the Defendants' stated reasons had no basis in fact or did not actually motivate their decision to promote Swartz over him.  In order to show that the Defendants' articulated reason did not actually motivate the challenged decision, Dees must "introduce additional evidence of [racial] discrimination." Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994).

Preliminarily, Dees argues that he should have received the F&I manager promotion because he was the most qualified candidate.  The Court must apply close scrutiny to the Defendants' stated reasons for concluding that Dees was not the most qualified candidate because Pittman's decision was based on subjective considerations, including the recommendations of other managers all of whom were Caucasian.  See Thurman v. Yellow Freight Sys., Inc., 90 F.3d 1160, 1167 (6th Cir. 1996) (stating that close scrutiny is applied when the decisionmakers are not members of the protected class and they use subjective criteria to make the decision).  The objective evidence establishes that Dees was the top salesman by

volume at Kings Dodge and that Dees had slightly more seniority than Swartz. The policy at all dealerships affiliated with the Kenwood Group is to promote the candidate with the most seniority when two candidates are equally qualified for a position. Pittman, the Kings Dodge decisionmaker, stated that the decision whether to promote Dees or Swartz was "very close" before three Kings Dodge managers criticized Dees and recommended Swartz. The sworn statements by Liggett, a manager at another Kenwood dealership and a former Kings Dodge employee, and Sunderman, Dees' former manager at a third Kenwood dealership, that Dees was a team player and got along with his co-workers contradicts the testimony offered by the Kings Dodge managers. Although the Defendants were entitled to exercise their business judgment in making the final decision of whom to promote, the reasonableness of the decision may be relevant to prove whether the proffered reasons were the real reasons for the decision. See Wexler, 317 F.3d at 576 (explaining how an employer's "business judgment" is not an absolute defense).

      Dees also points to alleged inconsistencies in the Defendants' explanations for the promotion decision as grounds to disbelieve their stated nondiscriminatory reasons. Defendants state that Dees did not receive the F&I manager promotion in part because they perceived that Dees did not have the mathematical aptitude necessary. However, Pittman concedes that no managers or customers complained about Dees' mathematical ability prior to June 2000. Also, Defendants did not list Dees' mathematical ability as reason for their decision when they first responded to the EEOC charge Dees filed after he was not promoted. (Doc. #16, Dees Decl. ex. 12). "An employer's changing rationale for making an adverse employment decision can be evidence of pretext." Cicero v. Borg-Warner Auto., Inc., 280 F.3d 579, 592 (6th Cir. 2002)

(citations omitted). A reasonable jury could find that defendants did not perceive that Dees had mathematical difficulties until the test he took in September 2000, after the F&I promotion had been awarded, and then used the test as a post-hoc justification for its June 2000 decision. (Doc. #16, Dees Decl. ex. 13).[7]

Similarly, in their written response to Dees' first EEOC charge, the Defendants emphasized Dees' performance on the personality profile test administered by Roesel as critical to the decision to promote Swartz over Dees. (Doc. #16, Dees Decl. ex. 12). Defendants now state that the test results were inconclusive and that Roesel recommended that Kings Dodge hire from outside rather than promote Dees or Swartz to the F&I position. Moreover, Dees graded the strongest on the ability to generate income and Roesel told Dees that he had graded the best. A reasonable jury might discount Roesel's testimony that his statement to Dees was inaccurate as further evidence of a changing rationale.

Dees also provides additional evidence that a jury could use to find pretext and discriminatory motive. Sunderman, the former manager of Dees and Swartz at Kingswood Chrysler Plymouth, stated that he would have promoted Dees over Swartz to F&I manager and that Dees did not have any difficulty with math or completing paperwork. At this summary judgment stage, Sunderman's declaration bears at least some probative circumstantial evidence of pretext given his personal knowledge of the two F&I candidates and about the operation of Kenwood Group dealerships generally. See Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 437 (6th Cir. 2002) (considering a non-decisionmaker's opinion regarding the plaintiff's

---

[7] In fact, in December 2000, after Dees had filed a second EEOC charge, the defendants erroneously informed the EEOC that Dees performed poorly on an employer-administered math test in June 2000, the time when the F&I promotion was awarded.

qualifications for a promotion to be relevant at the summary judgment stage).  At a trial, Dees would have to establish the relevance of Sunderman's opinions in connection to the actual attitudes of the decisionmakers at Kings Dodge.  See id.

Finally, the evidence establishes that in 2000 Kenwood had no black managers out of 88 manager positions at its dealerships.  Statistical evidence of discrimination can be used to prove that an employer's stated reason for an employment decision is pretextual.  See, e.g., Hopson, 306 F.3d at 437-38; Cicero, 280 F.3d at 593.  Generally, evidence concerning a low number of minorities in a position is not relevant unless the proponent establishes that the disparity is statistically relevant and provides evidence concerning the qualified minority applicants in the relevant labor market.  See Smith v. Leggett Wire Co., 220 F.3d 752, 761-61 (6th Cir. 2000) (gathering cases where statistical evidence was found to be not probative).  However, the Court considers the evidence relevant here at this stage because it is bolstered by the testimony of two witnesses.  Pittman conceded that it was "common knowledge" that the Kenwood Group had no black managers, that it was a topic of discussion between him and the general manager of a different Kenwood Group dealership, and that there was a general feeling that "it looks bad."  (Pittman Depo. at 69-71).  Additionally, Liggett, Dees' former co-worker and the manager at another Kenwood Group dealership, testified in a sworn declaration that he knew of several qualified African-American salesmen in the Kenwood Group who were qualified for promotions but passed over while white employees were promoted.  (Doc. #16, Liggett Decl.).

On each of these factors discussed herein, along with the other pieces of evidence submitted by Dees as evidence of pretext, Defendants offer contrary evidence or alternative, nondiscriminatory explanations.  At trial, a jury may well credit Defendants' evidence and

discredit the probative value of Dees' evidence. The Court holds only that the circumstantial evidence of pretext offered by Dees, in conjunction with his prima facie case, is sufficient to allow him to present his failure to promote claims to a jury. See Johnson v. Kroger Co., 319 F.3d 858, 869 (6th Cir. 2003) (stating, in a similar close case that "the ultimate decision of whether Kroger's proffered reason for discharging Johnson was legitimate or only a pretext intended to hide racial discrimination is a matter for the jury to determine"). Therefore, the Court denies summary judgment as to Dees' claims that he was denied the F&I manager promotion on the basis of his race.

   C. **Constructive Discharge Claim**

  Finally, Defendants move for summary judgment on Dees' constructive discharge claim. They contend that he voluntarily resigned his employment to pursue a position at Huntington Bank that he had already applied for and received. To support a constructive discharge claim, Dees must put forward sufficient evidence from which a reasonable jury could find that "working conditions were so unpleasant and unreasonable that a reasonable person in the employee's shoes would have felt compelled to resign." Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 459 n.4 (6th Cir. 2003); Yates v. Avco Corp., 819 F.2d 630, 636-37 (6th Cir. 1987). An employee's perceptions "must be judged objectively without consideration of his undue sensibilities." Wilson v. Firestone Tire & Rubber Co., 932 F.2d 510, 515 (6th Cir. 1991). The analysis of a constructive discharge claim also requires an inquiry into the "employer's intent and the reasonably foreseeable impact of its conduct on the employee." Yates, 819 F.2d at 637. Whether a constructive discharge has occurred is at least partially a matter of law. See id. at 636.

Dees has a burden, as the nonmoving party, to present affirmative evidence to support his claims. See Libery Lobby, 477 U.S. at 249. Dees bases his constructive discharge claims solely on the Defendants' failures to promote him to the positions in which he was interested. (Doc. #16, Dees Decl. at 4). However, a "failure to promote, . . . standing alone, does not amount to a constructive discharge." Fisher v. Conrad, No. 92-5297, 1993 WL 20184, *10 (6th Cir. Jan. 29, 1993); see also Lindsay v. Pizza Hut of Am., Nos. 02-5525, 02-5618, 57 Fed. Appx. 648, 2003 WL 244826, *3 (6th Cir. Jan. 29, 2003) (treating a constructive discharge claim as a failure to promote); Hartsel v. Keys, 87 F.3d 795, 800 (6th Cir. 1996) (rejecting the notion that a plaintiff's allegations that she was not promoted could amount to constructive discharge).[8]

Dees submits no evidence that he was harassed, demoted in terms of salary or job responsibilities, or pressured to resign. See Logan v. Denny's Inc., 259 F.3d 558, 569 (6th Cir. 2001) (listing factors that tend to prove constructive discharge); Fisher, 1993 WL 20184 at *11 (finding no constructive discharge where the record supported a finding that the plaintiff could have chosen to stay at her employment). Accordingly, a reasonable jury could not find that Defendants intended to force Dees, a top salesman, to resign or that a reasonable person in Dees' position would have felt compelled to resign. The Court grants summary judgment to

---

[8] Contrary to Dees' argument, Dews v. A.B. Dick Co., supra, does not require this Court to hold that a failure to promote, standing alone, could result in a constructive discharge. In Dews, the district court had granted summary judgment to the employer on Dews' constructive discharge claim because he presented no evidence that he was subjected to such difficult conditions that a reasonable person would have felt compelled to resign. See 231 F.3d at 1020. The district court also found that Dews had failed to satisfy the elements of a prima facie case of discrimination based on a failure to promote. See id. The Sixth Circuit reversed the district court's decision holding that Dews had stated a prima facie case of racial discrimination on based on the failure to promote. See id. at 1022-1023. Throughout its decision, the Sixth Circuit analyzed Dews' claim as a failure to promote claim and no where did the court state that a failure to promote could support a finding of constructive discharge.

Defendants on Dees' claims to the extent they are based on constructive discharge.

IV. **CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment (doc. #14). Summary judgment is granted in favor of Defendants on Dees' constructive discharge claims, but denied as to Dees' claims for failure to promote him to the finance and insurance manager position.

IT IS SO ORDERED.

      ___s/Susan J. Dlott_____
      Susan J. Dlott
      United States District Judge