**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **RICK DEES** | : | Case No. C-1-02-457 |
| | : | |
| Plaintiff, | : | (Judge Bertelsman) |
| | : | |
| vs. | : | |
| | : | |
| **KENWOOD DEALER GROUP, INC.** | : | **DEFENDANTS KINGS DODGE, INC.** |
| **and** | : | **AND KENWOOD DEALER GROUP,** |
| **KINGS DODGE, INC.** | : | **INC.'S PRE-TRIAL STATEMENT** |
| | : | |
| Defendants. | : | |

Pursuant to this Court's Order of October 19, 2004, defendants Kings
Dodge, Inc. ("King's Dodge") and Kenwood Dealer Group, Inc. ("Kenwood") hereby
submit the following Pre-Trial Statement.

**I.    Jurisdiction of the Court.**

This Court has jurisdiction over plaintiff's federal claims of race
discrimination (asserted under 42 USC § 2000(e) et seq. and 42 USC § 1981) under 28
USC § 1331.    This Court has jurisdiction over plaintiff's state claims of race
discrimination (asserted under ORC § 4112.99) pursuant to 28 USC § 1367.

**II.    Kind of Action.**

This is an action for race discrimination under federal and state law arising
from the failure of plaintiff to receive a promotion to the Finance & Insurance ("F&I")
Manager position for which he applied in May/June, 2000.

## III.    Statement of Facts.

All of the following facts are undisputed.

Plaintiff was hired by Kings Dodge as a salesperson in November, 1999. At the time plaintiff was hired, there was no opening for a salesperson.  Although plaintiff had worked as a salesperson for several other dealerships in the Greater Cincinnati area prior to being hired by Kings Dodge, including two dealerships owned by African-Americans, he had never been promoted to management at any of those dealerships and had never before worked in an F&I department of any automobile dealership.

In May, 2000, a position for F&I Manager became available at Kings Dodge.  Plaintiff and two Caucasian males, Karl Swartz ("Swartz") and Rob Gilley ("Gilley"), applied for this position.  All three applicants were sent to an off-site F&I training school, all three were administered a personality profile test, and all three were individually interviewed by Kings Dodge's General Manager, Mark Pittman ("Pittman"). At the time these three applicants applied for the F&I position, Gilley had approximately five years of seniority with Kings Dodge, Dees had approximately six months of seniority, and Swartz had approximately five months of seniority.  After considering the results of the interviews and the personality profile tests, Pittman remained undecided about whom to promote.  He therefore talked with his existing managers who each, in the strongest terms possible, told Pittman that they did not believe plaintiff should be promoted to this position and instead recommended that Swartz be promoted.

Although plaintiff contends in this litigation that the decision not to promote him was based on his race, each of the managers who advised Pittman regarding this

2

issue have testified that their respective recommendations had nothing to do with plaintiff's race, but were instead based on several factors including: Swartz exhibited a better attitude than plaintiff, was more of a "team player" than plaintiff, and co-workers enjoyed working with Swartz more than plaintiff; the managers each believed that plaintiff had difficulty with mathematical calculations which was a concern since a portion of the F&I Manager's job is to ensure that all of the figures on the final purchase contracts are correct and the contract is completed properly; and some of the managers did not trust plaintiff. Pittman therefore selected Swartz over Dees and Gilley.

Because plaintiff had one month more seniority than Swartz and had sold a few more cars than Swartz up to that point, and because the reasons Pittman ultimately selected Swartz over Gilley were somewhat subjective, plaintiff contends that the failure to promote him was based on his race. Plaintiff voluntarily resigned his employment at Kings Dodge approximately 13 months later, on July 16, 2001, after he had already applied for and accepted employment at Huntington Bank.

## IV.    Issues of Law (Substantive).

### A.    Kenwood Cannot be Liable to Plaintiff Under a "Single Employer" Theory.

Plaintiff has brought this action against Kings Dodge, his actual employer, as well as Kenwood. Kenwood is a separate corporation that provides management, advertising, accounting, and body shop services to ten automobile dealerships in the Greater Cincinnati area, including Kings Dodge. Kenwood is owned by four individuals who also own each of the dealerships. However, during the entire time that plaintiff was employed by Kings Dodge, Kenwood did not make personnel decisions for any of the

dealerships with which it was affiliated and no employee of Kenwood was involved in the decision regarding who to promote to the F&I Manager's position in June, 2000.

As Judge Dlott stated in her summary judgment opinion in this matter (p. 7 of Opinion), the Sixth Circuit has held that district courts should consider the following four factors in determining whether to treat two entities as a single employer:

> (1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control.

*Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 995 (6th Cir. 1997). With respect to the fourth factor, if neither of the entities is a sham, then this factor is not met. *Id.* Finally, though none of the factors provided in *Swallows* is conclusive, "the central concern" of the single employer theory is "control over labor relations." *Id.*

In the present case, although Kenwood published an employee handbook which was applicable to all of its affiliated dealerships, it exercised no further control with respect to labor relations during the time plaintiff was employed by Kings Dodge. Instead, the various general managers at each of the respective dealerships made all of the personnel decisions. In addition, the evidence at trial will show that neither Kings Dodge nor Kenwood is a "sham"; thus, the fourth element is not met. Finally, although Judge Dlott correctly pointed out that Pittman is a part-owner and a vice-president of Kenwood, he is not employed by Kenwood and no employee of Kenwood played any role in the decision not to promote plaintiff to the F&I position.

In sum, the evidence will show that Kenwood and Kings Dodge were not operated as a single employer.

**B.    Pittman's Decision Not to Promote Dees to the F&I Position Was Not Discriminatory.**

It bears noting initially that plaintiff has no direct evidence of discrimination. Moreover, Kings Dodge has explained its reasons for not selecting plaintiff for the F&I position in June, 2000 and none of those reasons had anything to do with plaintiff's race. Plaintiff may show that these reasons were pretextual only by showing either:

> (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the decision], or (3) that they were insufficient to motivate the [decision].

*Peters v. The Lincoln Electric Co.*, 285 F.3d 456, 471 (6th Cir. 2002). Furthermore, as the Sixth Circuit has recently noted:

> [A] reason cannot be proved to be a pretext for discrimination unless it is shown **both that the reason was false, and that discrimination was the real reason**.

*Samadi v. OBES, supra,* 48 Fed. Appx. at 575, *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original). The Sixth Circuit has also repeatedly held that the judiciary should not second guess the business judgment of employers, especially where decisions involving management level employees are involved. As the court in *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987) stated:

> Title VII does not diminish lawful traditional management prerogatives in choosing among qualified candidates. **So long as its reasons are not discriminatory, an employer is free to choose among qualified candidates. An employer has even greater flexibility in choosing a**

5

> **management-level employee because of the nature of such a position**.

(Citations omitted; emphasis added.)

Finally, the fact that subjective criteria was used in the selection process does not transmute the employer's decision into a discriminatory one. *E.g., Smith v. City of Dayton*, 1994 U.S. App. LEXIS 27880 (6th Cir. Oct. 3, 1994) ("The use of subjective criteria is permissible in the selection of employees in management positions"); *see also Carberry v. Monarch Marking Systems, Inc.*, 30 Fed. Appx. 389, 393 (6th Cir. 2002) (holding, in an ADEA case, that "the use of subjective factors in employment decisions is not at all prohibited....").

In the present case, plaintiff has no probative evidence of pretext and his disagreement with defendants' decision not to promote him simply does not equate to discrimination.

**C.    Plaintiff Is Only Entitled to Back Pay Until the Day He Resigned and He Is Not Entitled to an Award of Front Pay.**

This is not a discharge case. Judge Dlott has already concluded, **as a matter of law**, that plaintiff voluntarily resigned his employment on July 16, 2001 and was in no way constructively discharged. (Opinion at 15-17.) Defendants' potential back pay obligation is therefore cut off as of the date of plaintiff's resignation. Similarly, since plaintiff resigned, Kings Dodge has no obligation to reinstate plaintiff and, since front pay is a substitute remedy for reinstatement, *e.g., Worrell v. Multipress, Inc.*, 45 Ohio St. 3d 241, 246, 543 N.E.2d 1277, 1282 (1989), plaintiff is not entitled to an award of front pay.

6

**D.    Plaintiff Is Not Entitled to an Award of Punitive Damages.**

The United States Supreme Court has held that "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII." *Kolstad v. American Dental Association*, 527 U.S. 526, 545 (1999). The facts will be undisputed at trial that Kings Dodge has formal policies against discrimination and that its managers are trained in Title VII compliance. Thus, even if the jury concludes that Pittman's decision not to promote Dees was somehow discriminatory, which Kings Dodge is confident will not occur, the evidence will show that any discriminatory act was plainly against Kings Dodge's good faith efforts to comply with Title VII. Accordingly, an award of punitive damages (or even a punitive damage instruction) would not be appropriate.

**V.    Issues of Law (Procedural).**

Defendants are not currently aware of any procedural issues of law about which the Court should be aware.

**VI.    Issues of Law (Evidentiary).**

It is defendants' understanding that plaintiff will attempt to introduce evidence of statistics relating to the number of African-American managers employed by Kings Dodge as well as at other dealerships which are affiliated with Kenwood. Such statistical evidence is inadmissible as plaintiff does not have any evidence regarding the number of African-Americans who applied for managerial positions or any evidence

regarding the number of African-Americans within the Greater Cincinnati area (or even within the automotive industry) who are qualified to hold such positions. *See e.g., Smith v. Leggett Wire Co.*, 220 F.3d 752, 761 (6th Cir. 2000) (holding that "Smith's statistics were not admissible because he did not establish the number of qualified minorities available in each labor market"); *Gibson v. Frank*, 946 F.2d 1229, 1233 (6th Cir. 1991) (holding that the plaintiff failed to show discrimination because he did not demonstrate the proportion of blacks qualified for the position); *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 943 (6th Cir. 1987) (holding that "employee statistics unaccompanied by evidence regarding qualified potential applicants from the relevant labor market" lack probative value).

For these reasons, any evidence regarding the number of African-American managers employed by Kings Dodge or Kenwood is inadmissible.


## VII.    Instructions and Special Verdict.

The instructions which the parties have agreed to are attached hereto at Exhibit A; defendants' proposed instructions are attached hereto at Exhibit B.

Respectfully submitted,


s/Curtis L. Cornett
Curtis L. Cornett (0062116)
Cors & Bassett, LLC
537 E. Pete Rose Way, Suite 400
Cincinnati, Ohio  45202
(513) 852-8226
clc@corsbassett.com
Trial Attorney for Defendants

9

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2005, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to Paul H. Tobias, Esq., attorney for plaintiff Tobias, Kraus & Torchia, 911 Mercantile Library Building, 414 Walnut Street, Cincinnati, Ohio  45202.

s/Curtis L. Cornett
Curtis L. Cornett