**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **RICK DEES** | : | |
| | : | **CASE NO.   C-1-02-457** |
| Plaintiff | : | Judge Bertelsman |
| | : | |
| vs. | : | |
| | : | |
| **KENWOOD DEALER GROUP** | : | **PLAINTIFF'S PRETRIAL** |
| | : | <u>**MEMORANDUM**</u> |
| and | : | |
| | : | |
| **KINGS DODGE** | : | |
| | : | |
| Defendants | : | |

**I.    JURISDICTION OF THE COURT**

This Court has jurisdiction under 28 U.S.C. Section 1331 since this is an action

for violation of federal civil rights statutes and there is supplemental jurisdiction

under 28 U.S.C. Section 1367 concerning violation of state law.

**II.    KIND OF ACTION**

This is an action for race discrimination in employment for failure to promote in

violation of Title VII of the 1964 Civil Rights Act as amended, 42 USC § 2000e et

seq., and 42 USC § 1981 and O.R.C. §§ 4112.02(A) and 4112.99.

**III.    STATEMENT OF FACTS**

A.    The following facts are undisputed by the parties:

1.    Rick Dees was hired in November 1999 by Kings Dodge, Inc. as a

Salesperson.

2.    In May and June 2000 Dees, Karl Swartz, and Rob Gilley were considered for a Finance and Insurance Manager (F & I) position.

3.    In the year 2000, Dees sold more cars than any other salesperson at Kings Dodge.

4.    Swartz was ultimately chosen for the F & I Manager position.

5.    Dees had sold 6 more cars than Swartz in 2000 prior to the promotion decision.

6.    At the time of the promotion decision, Dees had approximately 6 months of service with Kings Dodge, Swartz had approximately 5 months of service with Kings Dodge, and Gilley had approximately 5 years of service with Kings Dodge.

7.    Dees resigned from Kings Dodge on July 16, 2001.

B.    The following facts are disputed by the parties after a good faith attempt to resolve disputes of fact:

1.    Kenwood Dealer Group had 88 managers and administrative officials in 2000.  None were African American.

2.    Kings Dodge had 8 managers and officials in August 2000.  None were African American.

3.    Dees had 12 years experience as a car salesman at the time of the June 2000 promotion decision.

4.    Dees had more car selling experience and more years of college than Swartz.

5.    Dees was more qualified than Swartz for the F & I Manager job.

6.    Paragraph 4.05 of the Company handbook says that when 2
employees are "equally qualified length of service with the company
shall be the determining factor in filing vacancies".

7.    Swartz was demoted in August 2000, soon after his promotion.

8.    Kings Dodge is one of ten dealerships in the greater Cincinnati,
Ohio area affiliated with Defendant Kenwood Dealer Group, Inc.
("Kenwood" or the "Kenwood Group").  Kenwood provides
management services to the dealerships under its umbrella.
(Reichert Depo. at 8-10.  It provides a body shop for the use of all
the dealerships, plus computer, advertising and accounting
services for each dealership. (Id. at 10, 13-15).  The Kenwood
dealerships also share a benefits program. (id. at 16).

9.    The same four individuals own Kenwood also own each of the
dealerships affiliated with Kenwood. (Id. at 8-9).  Kenwood itself
does not own the dealerships.  (Id. at 8).  Robert Reichert, one of
the owners, is the president and general counsel of Kenwood and
of each dealership.  (Id. at 19; doc. #14, ex. B). The general
managers of each dealership affiliated with Kenwood meet weekly.
(Reichert Depo. at 20).  Also, the dealerships provide sales reports
to Kenwood on a regular basis.  (Id. at 13-14).

10.   The General managers of each dealership handled personnel
matters at their respective dealership at all times relevant to Dees'

claims and up to November 2001. (Id. at 16).[1]  Reichert testified

that he does not approve the dealerships" hiring and promotion

decisions. (Id. at 107-08; Doc. #14, ex. B).  However, even prior to

November 2001, Kenwood, had some involvement in personnel

decision at the dealerships.  Kenwood provided Kings Dodge and

the other dealerships with a common Employee Handbook.

(Reichert Depo. at 23-35).  The Handbook contains a preference

that dealerships hire from within and mandates that seniority be

used as a tiebreaker when two candidates with equal qualifications

complete for an open position at one of the dealerships. (Doc. #16

ex. 9 at 28).

11.    Pittman says he selected Swartz because "he liked Karl better".

12.    Mr. Reichert, Kenwood's President, stated in a telephone

conversation in 2002 that the major reason Dees was rejected in

June 2000 was a poor showing on a math test.  In fact, the math

test was not given until September 2000.

13.    There were several African Americans who were qualified and not

promoted at Kenwood.

14.    Former Manager Sunderman who was the manager of both Dees

and Swartz at Kingswood Chrysler believes that Dees is more

qualified.  Sunderman believes Dees "was a better salesman,"

---

[1]    In November 2001, Kenwood hired Rachel Lemmel to handle all personnel matters for the
dealerships. (Reichert Depo. at 16).

"more capable and efficient overall" and Swartz "was more disorderly with respect to his paperwork".

15. There was a pattern of discrimination at the Kenwood Dealer Group organizations.

16. Plaintiff has shown a prima facie case of race discrimination for Defendant's failure to promote him.

17. There are major contradictions, changing rationales and inconsistencies in Defendant's explanations concerning the selection of Swartz rather than Dees.

18. Prior to 2002 Defendant never advanced the opinions of 3 Managers as a reason for rejection of Dees and selection of Swartz.

19. Defendant admitted "it looks bad" with respect to having no African American managers.

20. Ron Liggett stated Dees was respected by his co-workers and viewed as a team player.

21. Defendant didn't list Dees' math ability as reason for decision when Defendant first responded to EEOC charges.

22. Defendant's reason for failing to promote Dees is pretextual.

23. Defendant discriminated because of race in failing to promote Dees to F & I Manager in June 2000.

IV.    **ISSUES OF LAW (SUBSTANTIVE)**

We do not believe there are any major issues of substantive law.  The parties

essentially agree that the McDonnell-Douglas burden-shifting, indirect, method of

proof for discrimination cases applies to this case.  There are a few issues

related to damages:

> A.    Plaintiff believes that back pay can be awarded up to the date of
>
> trial and also that front pay is appropriate.  Plaintiff does not believe
>
> that his resignation in 2001 cuts off the availability of damages.
>
> Plaintiff agrees that since the constructive discharge issue is out of
>
> the case he cannot recover his entire lost salary for the period after
>
> his resignation.  However, he is still entitled to back pay in an
>
> amount between what he would have earned as F & I Manager and
>
> what he would have earned as Salesperson.  See Wells v. North
>
> Carolina Bd. of Alcoholic Control, 714 F.2d 340, 342 (4th Cir. 1983);
>
> Helbling v. Unclaimed Salvage & Freight Co., Inc., 489 F.Supp.
>
> 956, 963 (ED Pa. 1980); Ezold v. Wolf, Block, Schorr and Solis-
>
> Cohen, 758 F. Supp. 303, 311-12 (ED Pa. 1991).  Defendant
>
> disagrees.
>
> B.    Plaintiff believes that punitive damages can be awarded by the jury.
>
> Defendant disagrees.  The parties are somewhat in agreement on
>
> the appropriate standards for punitive damages.  Defendant simply
>
> objects that the facts of this case do not meet the standard for
>
> punitive damages.  Plaintiff strongly disagrees.  He believes that

the indifference to promoting blacks, the poor EEO numbers, the

difference in treatment, the contradictions, and the changing

rationales of Defendant all show an entitlement to punitive

damages.

## V.    ISSUES OF LAW (PROCEDURAL)

We do not believe there are any issues of procedural law.

## VI.    ISSUES OF LAW (EVIDENTIARY)

We do not currently believe there are any issues of evidentiary law.

## VII.    INSTRUCTIONS AND SPECIAL VERDICT

The parties have agreed on several jury instructions and submit those separately

as Exhibit A.  There are some instructions upon which the parties could not

agree.  Plaintiff submits below his instructions upon which the parties could not

agree along with citations.

A.    Plaintiff's Proposed Instruction No. 1

### DISCRIMINATION EVIDENCE

In attempting to show that Defendant discriminated against him, Mr.

Dees need not offer direct evidence, or an admission that Defendant failed

to promote him because of his race.  Seldom is such evidence available in

a discrimination case.[3]  Rather, Mr. Dees may prove his case through

circumstantial evidence, or evidence from which you can infer that the

Defendant was motivated by Mr. Dees' race.

Some of the types of circumstantial evidence that you may, but

need not, consider as evidence that race motivated the failure to promote

are: evidence establishing that Defendant's stated reason is pretextual, a reliance on subjective (as opposed to objective) decision-making,[4] violations of company policies or practices surrounding termination,[5] a difference in treatment between white workers and similar workers that black,[6] a pattern of treating black employees less favorably,[7] falsity of reason(s) for the failure to promote,[8] the failure to establish reasonably objective standards for use in promotion decisions,[9] and unreasonableness of a business decision surrounding termination.[10] You may consider other factors as well.

3    Kohmescher v. Kroger Co. (1991), 61 Ohio St.3d 501, Mauzy v. Kelly Services, Inc. (1996), 75 Ohio St.3d 578
4    Thurman v. Yellow Freiciht Sys. Inc. (6th Cir. 1996), 90 F.3d 1160, 1167.
5    Wells v. New Cherokee (6th Cir. 1995), 58 F.3d 233, 236.
6    Wells v. New Cherokee (6th Cir. 1995), 58 F.3d 233, 237.
7    Scott v.Goodyear Tire & Rubber Co. (6th Cir. 1998), 160 F.3d 1121, 1129.
8    Wexler v. White's Fine Furniture (6" Cir. 2003), 317 F.3d 564, 576. (en banc)
9    See Rowe v. General Motors Corp. (5th Cir. 1972), 457 F.2d 348, 359 (subjective evaluation procedures "are a ready mechanism" for discrimination); EEOC v. Rodriguez (E.D. Cal 1994), 1994 WL 714003, 66 FEP 1649 (use of standardless criteria in hiring supported claim of discrimination); Watson v. National Linen Service (1 lth Cir. 1982), 686 F.2d 877, 881 (Failure to establish reasonably objective standards for hiring is a discriminatory practice).
10    Wexler v. White's Fine Furniture (6th Cir. 2003), 317 F.3d 564, 576 (en banc)

B.    Plaintiff's Proposed Instruction No. 2

**"PRETEXT -- DEFINITION**

A "pretext" is a fictitious reason or motive advanced to conceal a real one.

There are different ways plaintiff can establish "pretext." Mr. Dees may show that the discriminatory reason (e.g., race) actually motivated defendant's actions, notwithstanding the stated reason. Alternatively, Mr. Dees can establish pretext by showing that the stated reason is "unworthy

of credence."  A pretext can also be shown if the employer's business

judgment was so ridden with errors that the employer could not have

honestly relied on it.

Plaintiff may also show pretext by showing that the factors alleged

by the defendant to have justified the discharge were insufficient to

motivate the discharge.

Adapted from instruction given by Judge Weber in <u>Sacolick v. General
Electric Co.</u>, No. C-1-94-017; <u>Texas Dep. of Comm. Affairs v. Burdine</u>, 450
U.S. 248, 101 S.Ct. 1089 (1981); <u>Reeves v. Sanderson Plumbing
Products, Inc.</u>, 120 S.Ct. 2097, 147 L.Ed. 2d 105 (2000); <u>Manzer v.
Diamond Shamrock Chem. Co.</u>, 29 F.3d 1078 (6th Cir 1994); <u>Thurman v.
Yellow Freight Systems Inc.</u>, 90 F.3d 1160 (6th Cir. 1996); <u>Kline v. TVA</u>,
128 F.3d 337 (6th Cir. 1997); <u>Schwartz v. Gregori</u>, 45 F. 3d 1017, 1021
(6th Cir. 1995).

C.    Plaintiff's Proposed Instruction No. 3

## **DISCRIMINATION - DECISION MAKERS**

The fact that some of the persons who participated in some

decisions regarding Plaintiff were not the final decision-maker does not

insulate Defendant as a company from a finding of discrimination,

harassment, or retaliation.  So long as a person anywhere in the chain of

events leading to the discharge decision was influenced or motivated by

Plaintiff's race or protected activity in giving his or her input, the ultimate

decision is discriminatory.

Authority:  <u>Sacolick v. General Electric Co.</u>, No. C-1-94-017 (SD Ohio).

D.    Plaintiff's Proposed Instruction No. 4

## **BUSINESS JUDGMENT**

The employer claims that it acted for non-discriminatory reasons. In deciding whether an employer has acted for discriminatory reasons, you should not substitute your judgment for that of the employer, even if you would have made a different business decision.

However, an employer's business judgment is not an absolute defense to unlawful discrimination.

The reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation i.e. whether it was pretextual. You may consider whether the employer made a reasonably informed and considered decision before terminating Kerstine.

The reasonableness of a business decision is critical in determining whether the proffered judgment was the employer's actual motivation. For example, if you can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, you can legitimately infer that the employer consciously selected a less-qualified candidate - something that employers do not usually do, unless some other strong consideration, such as discrimination, enters the picture. Thus, you may conclude that the employer's "business decision" was so lacking in merit as to call into question its genuineness, and thus find it pretextual.

(Parts of a "business decision" instruction were agreed to.)

10

OJI § 266.03; <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564 (6 th Cir. 2003) (en banc).

E.    Plaintiff's Proposed Instruction No. 5

**DAMAGES—BACK PAY**

If you find for the employee, he is entitled to recover lost wages and benefits, including any increases in wages or benefits lost because of discrimination. The amount of wages and benefits due is determined by calculating the amount that would have been earned from the date of the promotion to the present. You may include all forms of compensation that the employee proved he would have earned, but for the failure to promote, including salary, bonuses, vacation pay, pension, health insurance and other benefits. In determining the amount of any back pay, you must deduct the amount of wages and benefits received from replacement income during the period of back pay awarded.

(The only dispute here is on the length of the back pay.)

OJI § 266.27.

F.    Plaintiff's Proposed Instruction No. 6

**FRONT PAY**

If you find for the employee, you shall consider an award of front pay. Front pay includes the amount the employee would have earned from the date of the verdict until the date you find the Employee's loss of future pay and benefits will cease. The purpose of front pay is to temporarily compensate the employee while he seeks comparable employment and

not to give long-term compensation from the present to retirement. Among the factors to be considered in deciding the amount of front pay are the following:

(A) the age of the employee and his reasonable prospects of obtaining comparable employment elsewhere;

(B) salary and benefits;

(C) expenses associated with finding new employment; and

(D) the replacement value of fringe benefits until comparable fringe benefits are obtained or for a reasonable length of time.

In determining the amount of front pay, you must deduct the amount of wages and benefits you believe will be received from replacement income during the period of front pay awarded.

(There is disagreement on the availability of front pay.)

OJI § 266.27.

G.    Plaintiff's Proposed Instruction No. 7

## **PUNITIVE DAMAGES**

If you find that the Defendant intentionally discriminated against, racially harassed, or retaliated against Plaintiff and you award compensatory damages, you may also consider whether to award punitive damages.  If the Plaintiff has proven that the Defendant acted with malice or with callous and reckless indifference to his rights, you may award such punitive damages.  In making any award of punitive damages, you should consider that the purpose of punitive damages is to punish the Defendant

for its conduct, and to deter the Defendant and other companies from engaging in similar conduct in the future.  The law does not require you to award punitive damages.  However, if you decide to award punitive damages, you must use sound reason in setting the amount of the damages.  The amount of an award of punitive damages must not reflect bias, prejudice, or sympathy toward any party.  However, the amount can be as large as you believe necessary to fulfill the purposes of punitive damages.  You may consider the financial resources of the Defendant in fixing the amount of punitive damages.

(There is disagreement on the factual basis for punitive damages in this case.)

Authority:    <u>Wheat</u>, supra


H.    Plaintiff's Proposed Interrogatory No. 1

## 1.    BACKPAY, FRONT PAY AND COMPENSATORY DAMAGES


What amounts, if any, do you award to Plaintiff for:

Backpay and Benefits         _____

Front Pay and Benefits        _____

Compensatory damages     _____
(emotional distress, etc.)


(Defendant disagreed on a line for front pay.)

I.    Plaintiff's Proposed Interrogatory No. 2

2.    **PUNITIVE DAMAGES**

Do you find that Defendant acted with malice or with callous and

reckless indifference to Plaintiff's rights?

Yes _____            No _____

What amount of punitive damages should be awarded to Plaintiff:

$_____

(Defendant disagreed that a punitive instruction was appropriate.)

Plaintiff attaches as Exhibit B to this memorandum a list of damages.

Respectfully submitted,

/s/ David D. Kammer_____
David D. Kammer—0061808
Paul H. Tobias - 0032415
Tobias, Kraus & Torchia
911 Mercantile Library Bldg
414 Walnut Street
Cincinnati, Ohio  45202
(513)  241-8137
Fax (513) 241-7863
TKT@TKTlaw.com
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2005, I electronically filed the foregoing with
the Clerk of Court using the CM/ECF system which will send notification of such filing to
the following:  Curtis L. Cornett, Cors & Bassett, LLC, 537 E. Pete Rose Way, Suite
400, Cincinnati, OH 45202.

/s/ David D. Kammer_____
David D. Kammer