UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **RICK DEES** | : | |
| | : | **CASE NO.  C-1-02-457** |
| Plaintiff | : | Judge Dlott |
| | : | |
| vs. | : | |
| | : | **PLAINTIFF'S MOTION IN** |
| **KENWOOD DEALER GROUP** | : | **LIMINE CONCERNING** |
| | : | **POST-RESIGNATION** |
| and | : | **BACKPAY** |
| | : | |
| **KINGS DODGE** | : | |
| | : | |
| Defendants | : | |

Now comes Plaintiff and moves in limine to include in the trial evidence, argument, and instructions related to Plaintiff's loss of income for the period after he resigned his employment with Defendants on July 16, 2001.  For the reasons that follow the Court should permit this issue to be a part of the upcoming trial.

**MEMORANDUM IN SUPPORT OF MOTION**

At the Final Pretrial Conference in January 2005, the issue of Plaintiff's entitlement to wage loss damages for the period after he resigned from Defendants' employ came up.  The Court, at that time, asked that the issue be briefed in a motion in limine.  Plaintiff submits this motion as a result.

A short background of the facts and procedural background will be helpful. Defendants hired Plaintiff as a car Salesperson in November 1999.  In June 2000, Plaintiff sought a promotion to the Finance and Insurance Manager (F & I) position.

Defendants denied Plaintiff the promotion in favor of a less-qualified Caucasian employee. This promotion decision is the basis for the race discrimination claim that will be tried to the Court.

Plaintiff remained a car salesman for about another year. He earned about $39,000 in this year. The F& I Manager earned substantially more than Plaintiff. Because of the failure to promote, lack of opportunity, and overall oppressive racial situation at the dealership, Plaintiff resigned his employment on July 16, 2001 and took another position elsewhere.

Plaintiff originally claimed constructive discharge for the July 2001 resignation. However, the Court found that the resignation did not rise to the level of constructive discharge as a matter of law and, thus, granted summary judgment to Defendants on the constructive discharge claim.

It is clear under discrimination law that Plaintiff can recover the difference between the F & I Manager earnings and the Salesperson earnings up to the time of his July 2001 resignation. Further, Plaintiff recognizes that the Court's ruling on the constructive discharge claim precludes him from claiming that he is entitled to the $39,000 he was earning as Salesperson as a measure of lost wages for the period following his July 2001 resignation. However, because the F & I Manager position earned significantly more than the car salesman position, Plaintiff's resignation should not affect his ability to recover the difference between what the F & I Manager would have earned and what the Salesperson would have earned following his July 2001 resignation (subject to mitigation, of course).

Several courts that have ruled on the same or similar issues agree with Plaintiff. For example, in <u>Ezold v. Wolf, Block, Schorr & Solis-Cohen</u>, 758 F.Supp. 303 (E.D. Pa. 1991), <u>reversed on other grounds</u>, 983 F.2d 509 (3rd Cir. 1992), the court was confronted with an almost identical situation in a sex discrimination context. In <u>Ezold</u>, the court concluded that the plaintiff was denied a promotion to partnership in a law firm because of her gender. However, the court also concluded that the plaintiff's subsequent resignation from employment did not rise to the level of a constructive discharge. <u>Id.</u> at 304. The defendant argued that the "constructive discharge rule" should wipe out any entitlement to backpay for the period after her resignation. The court disagreed:

> Where a plaintiff resigns after having been discriminatorily denied the one significant promotion available within the arena of his or her employment however, a more appropriate standard for determining the entitlement to relief past the date of resignation is one of reasonableness. In denial of promotion settings, the application of the constructive discharge rule is almost illogical because the employer is acting discriminatorily with the effect of keeping the plaintiff *in* his or her current position. Over and above the humiliation inflicted upon plaintiffs like Goss, a plaintiff who is discriminatorily denied a significant promotion, such as partnership in a professional firm, is burdened by the knowledge that she has been denied the job title and compensation commensurate with the success she has achieved in the performance of her work over the course of several years; were it not for her gender she would have been promoted to the significantly superior employment position she deserves. Strict application of the constructive discharge rule in denial of promotion cases would mean that no matter how severe an employer's discrimination is with respect to the denial of a promotion, an employee would be forced to remain in the inferior employment position so long as the employer does not permit the working conditions of the inferior employment position to become intolerable. If the employee instead resigns the inferior position, her entitlement to a remedy for the discriminatory denial of the superior position would cease at the date of resignation. Such a rule flouts the Supreme Court's instruction that a complete Title VII remedy "should only be denied for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination

3

> throughout the economy and making persons whole for the injuries suffered through past discrimination." *Albemarle Paper,* 422 U.S. at 421.

Id. at 308.  The court further explained that the constructive discharge doctrine and relief under Title VII do not fit neatly together:

> Constructive discharge doctrine meanwhile, developed under the National Labor Relations Act, has also taken an important place in the context of employer-employee relations, enabling the courts to go beyond the simple query as to whether the employee was "fired" and to scrutinize more equitably an employee's decision to leave his or her employment.  The two doctrines--Title VII and constructive discharge--are born of different necessity and each holds a defendant to a different standard for purposes of determining liability.  As constructive discharge doctrine addresses only the "tolerability" of the conditions in which an employee must work, be they motivated by lawful or unlawful considerations, Title VII's scrutiny includes the lawfulness of the bases upon which an employer sets those conditions.  Such a distinction suggests that constructive discharge doctrine is not a perfect measure of the severity of a Title VII claim for purposes of determining the appropriate scope of relief, just as the application of a different standard of liability for each doctrine suggests that one is not a perfect barometer of the legal merit of the other.
>
> **The constructive discharge inquiry as to the tolerability of Ms. Ezold's working conditions at Wolf, Block is not rendered meaningless by an inquiry as to whether her decision to resign was reasonable under the circumstances for purposes of determining the appropriate Title VII relief for the period after her resignation.**  The constructive discharge inquiry may be informative for purposes of determining whether Ms. Ezold properly mitigated her damages, but it is not appropriately applied as a strict limitation on the scope of Title VII relief available to her here.

Id. at 312 (emphasis added).  Thus, the court held that backpay was not cut off by the resignation.  The court further held that the lack of constructive discharge could be considered in the context of mitigation of damages.

Other courts have agreed.  In <u>Wells v. North Carolina Bd. of Alcoholic Control</u>, 714 F.2d 340 (4th Cir.1983), the court held that back pay is proper whether or not there

4

is a constructive discharge when the employee "ended his employment for reasons beyond his control, reasons that were causally linked to the [employer's] wrongful denial of promotion. Id. at 342 (upholding back pay award to employee who terminated his stock-clerk position after he was wrongfully denied a promotion to sales clerk and his employer refused his request for lighter duties to accommodate a work-related back injury); see also Helbling v. Unclaimed Salvage & Freight Co., Inc., 489 F.Supp. 956, 963 (E. D. Pa. 1980) (rejecting notion that the back pay award to an employee discriminatorily denied a promotion on the basis of her gender should terminate on the date of her resignation).

In accordance with the holdings of these court's and the purposes of Title VII to root out discrimination and fully compensate the victims, the court should permit the jury to consider awarding backpay damages for the period following Mr. Dees' resignation in July 2001.

Respectfully submitted,

s/ David D. Kammer
David D. Kammer—0061808
Paul H. Tobias – 0032415
Tobias, Kraus & Torchia
414 Walnut Street
Suite 911
Cincinnati, Ohio 45202
(513) 241-8137
(513) 241-7863 (fax)
davek@tktlaw.com
Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

    I hereby certify that on February 7, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: Curtis L. Cornett, Cors & Bassett, LLC, 537 E. Pete Rose Way, Suite 400, Cincinnati, OH 45202.

                                       s/ David D. Kammer
                                       David D. Kammer—0061808