# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **RICK DEES** | Case No. C-1-02-457 |
| Plaintiff, | (Judge Bertelsman) |
| vs. | |
| **KENWOOD DEALER GROUP, INC.** and **KINGS DODGE, INC.** | **DEFENDANTS' MEMORANDUM OPPOSING PLAINTIFF'S MOTION IN LIMINE CONCERNING POST-RESIGNATION BACK PAY** |
| Defendants. | |

## I. INTRODUCTION

Plaintiff's motion in limine asking this Court to permit the jury to consider awarding him back pay damages for any period following his voluntary resignation from Kings Dodge, Inc. ("Kings Dodge") is seriously flawed from both a factual and legal perspective. From a factual standpoint, plaintiff's argument is unsound because there is no evidence that plaintiff's resignation had anything to do with defendants' failure to promote him; instead, the undisputed evidence shows that he resigned because he chose to pursue a different career. From a legal standpoint, plaintiff's motion is without merit because virtually every circuit court that has considered the issue, **including the Sixth Circuit**, has held that, in order for a plaintiff to recover lost wages beyond the date of his resignation, that plaintiff must prove that he was constructively discharged.

In short, and as discussed below, plaintiff's motion in limine should be rejected out of hand by this Court.

## II. RELEVANT FACTS

Although plaintiff argues in his motion that he resigned his employment at Kings Dodge "[b]ecause of the failure to promote, lack of opportunity, and overall oppressive racial situation at the dealership" (Plt.'s motion at 2), plaintiff's deposition testimony belies this argument. At his deposition, defendants' counsel specifically asked plaintiff why he left Kings Dodge:

> Q    Why did you resign in July of 2001?
> A    **To pursue other career paths**.
> Q    No one in management asked you to leave, did they, sir?
> A    No.

(Deposition of Rick Dees at 141-42; emphasis added.)[1] Plaintiff reiterated his reason for resigning his employment near the end of his deposition when he testified as follows:

> Q    When you went into Mr. Pittman's office in July and told him you were resigning, you told him you were resigning because you wanted to change careers, right?
> A    I gave him a letter just stating that I was resigning. I didn't share with him.
>
> * * *
>
> Q    **But that is the reason you resigned? You wanted to change careers?**
> A    **Yes. Yes**.

(*Id.* at 198-99; emphasis added.)

Based on plaintiff's deposition testimony, it is not surprising that Judge Dlott has already found, **as a matter of law**, that plaintiff was not constructively discharged and she therefore granted summary judgment to defendants on this portion of plaintiff's Complaint. Judge Dlott reasoned as follows:

---

[1] The excerpts of plaintiff's deposition transcript cited herein are attached hereto as Exhibit A.

2

> Dees submits no evidence that he was harassed, demoted in terms of salary or job responsibilities, or pressured to resign.
>
> * * *
>
> Accordingly, a reasonable jury could not find that Defendants intended to force Dees, a top salesman, to resign or that a reasonable person in Dees' position would have felt compelled to resign.

(Judge Dlott's Opinion at 16.)

In sum, plaintiff's argument that he resigned because of the alleged discriminatory treatment he received is simply unsupported by the facts, including his own deposition testimony.

### III. ARGUMENT

**Absent a Finding of Constructive Discharge, a Plaintiff Is Not Entitled to Any Economic Damages After He Voluntarily Resigns His Employment.**

The Sixth Circuit and virtually every federal circuit court that has expressly addressed the issue has held that, unless a plaintiff can prove he was constructively discharged, that plaintiff does not have a viable claim for damages after the date he resigned his employment, regardless of whether the plaintiff can prove that he suffered discrimination while he was employed. In this regard, in *Gomez v. Great Lakes Steel Division National Steel Corp.*, 803 F.2d 250, 256 (6th Cir. 1986), the Sixth Circuit expressly rejected the plaintiff's argument that his economic damages did not necessarily end on the date of his retirement:

> If there was no actionable constructive discharge, Gomez cannot recover for those losses directly attributable to his voluntary decision to retire. **Absent constructive discharge, Gomez had a duty to mitigate his damages by remaining on the job.** (emphasis added).

3

Similarly, in *Burton v. State of Ohio, Adult Parole Authority*, 798 F.2d 164 (6th Cir. 1986), the Sixth Circuit specifically indicated that economic damages are not available under Title VII after the date a plaintiff voluntarily leaves his employment unless a constructive discharge is proven. As the Sixth Circuit stated:

> Because we reverse on the liability issue, we do not reach the question of the extent of the back pay award. We do note, however, that the district court expressly found that Burton voluntarily resigned his position on July 20, 1978. **The purpose of the back pay award under Title VII is to place the aggrieved party in the position he or she would have been in but for the discrimination, not to award the plaintiff a windfall.** *Id.* at 167, n. 4.

The Sixth Circuit's position on this issue is hardly unique. Indeed, virtually every other federal court of appeals has also ruled that a plaintiff is not entitled to any post-resignation economic damages unless the plaintiff can show that his resignation was the result of a constructive discharge.

Thus, in *Jurgens v. EEOC*, 903 F.2d 386 (5th Cir. 1990) which, like the instant case, involved an employee who was denied a promotion he thought he deserved and subsequently resigned his employment, the district court found that the employee was discriminatorily denied the promotion at issue and found that he was entitled to economic damages regardless of whether he was constructively discharged. The Fifth Circuit squarely rejected this holding, reasoning as follows:

> [I]t is well settled in this circuit that, in order for an employee to recover back pay for lost wages beyond the date of his retirement or resignation, the evidence must establish that the employer constructively discharged the employee.
> * * *
> We simply hold, as we did in *Bourque*, that **where an employer discriminatorily denies promotion to an**

> **employee, that employee's duty to mitigate damages encompasses remaining on the job**.

903 F.2d at 389 (citations and footnotes omitted; emphasis added.) Similarly, all of the following circuit courts have held that an employee is not entitled to economic damages after the date of resignation unless a constructive discharge occurred: *Muller v. United States Steel Corp.*, 509 F.2d 923, 930 (10th Cir. 1975) ("Unless appellant was constructively discharged, he would not be entitled to damages in the form of back pay, interest, and retirement from the date of leaving the Steel Company's employ"); *White v. The Dial Corp.*, 1995 U.S. App. Lexis 7838, *4, (7th Cir., April 6, 1995) (attached hereto as Exhibit B) ("When a plaintiff has elected to resign from employment with the defendant, she normally cannot obtain reinstatement and back pay ... unless she succeeds in proving that she was constructively discharged..."); *Maney v. Brinkley Municipal Waterworks and Sewer Dept.*, 802 F.2d 1073, 1076 (8th Cir. 1986) ("Because they were not constructively discharged, we must vacate the award of back pay and reinstatement to [the plaintiffs]"); *Satterwhite v. Smith*, 744 F.2d 1380, 1381, n. 1 (9th Cir. 1984) ("An employee who quits cannot secure back pay unless his employer constructively discharged him").

In sum, in the present case, Judge Dlott's ruling that plaintiff was not constructively discharged necessarily cuts off plaintiff's economic damages as of the date of his resignation.

The three cases cited by plaintiff in his motion in limine as support for his position that economic damages may continue to accrue after the date of his resignation miss the mark for many reasons. To begin with, none of the cases cited by plaintiff are within the Sixth Circuit. In addition, the case most heavily relied on by plaintiff, *Ezold v.*

5

*Wolf, Block, Schorr and Solis-Cohen*, 758 F. Supp. 303 (E.D. Pa. 1991) **was actually reversed by the Third Circuit on appeal**. Although plaintiff cavalierly characterizes the reversal as being "on other grounds," the fact is that the Third Circuit expressly reversed the district court's holding that the defendant discriminated against the plaintiff and in fact **entered judgment in favor of the defendant**. *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 548 (3rd Cir. 1992). Because of its holding, the Third Circuit found it "unnecessary to address the issues raised in Wolf's appeal concerning the remedy the district court awarded to Ezold...." *Id.* at 513. Accordingly, it is difficult to understand how the district court's holding in *Ezold* regarding damages can have any persuasive value whatsoever when the court of appeals reversed the district court's decision regarding liability.

With respect to the case of *Wells v. North Carolina Bd. of Alcohol Control*, 714 F.2d 340 (4th Cir. 1983), also cited by plaintiff as support, the facts of *Wells* show that the plaintiff in that case injured his back after he was denied a promotion to a position where he arguably would not have sustained such an injury, was then unable to continue to work in his physically strenuous position after his injury, and therefore quit his employment. *Id.* at 343. As the Fifth Circuit reasoned in *Jurgens v. EEOC, supra*, in explaining why *Wells* in no way stands for the general proposition that a plaintiff is entitled to economic damages after he voluntarily resigns:

> *Wells* ... presents an exceptional circumstance in that the employee who was discriminatorily denied promotion subsequently developed a condition that made his continuing in his same job station an extreme hardship. Under such circumstances, of course the objective reasonable-employee constructive discharge standard arguably must be

6

> modified to take into account the peculiar disabilities of the employee.

903 F.2d at 389, n. 2. Thus, because of its unique facts, *Wells* is of no help to plaintiff in this case.

Finally, plaintiff's reliance on *Helbling v. Unclaimed Salvage and Freight Co., Inc.*, 489 F. Supp. 956 (E.D. Pa. 1980) is misplaced as the court in *Helbling* did not specifically address the issue of whether the plaintiff was constructively discharged and the defendant never expressly argued that plaintiff's damages should terminate as of the date she resigned. *Id.* at 963. Moreover, the Third Circuit has recognized (the district court that decided *Helbling* is located within the Third Circuit), in cases subsequent to *Helbling*, that "classifying a termination as a constructive discharge rather than a voluntary quit has significant ramifications with respect to the scope of relief." *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 887 (3rd Cir. 1984); and see *EEOC v. L.B. Foster Co.*, 123 F.3d 746, 756 (3rd Cir. 1997) (quoting the above language in *Goss*).

In short, the legal support for plaintiff's bizarre position on this issue boils down to one circuit court case whose facts are wholly inapposite to the present case. In contrast, defendants' commonsense position that economic damages may not be awarded after the date a plaintiff voluntarily resigns his employment is buttressed by the Sixth Circuit and virtually every other federal circuit court.

## IV. CONCLUSION

For all of the reasons set forth herein, defendants respectfully request that plaintiff's motion in limine be denied and request that the jury be instructed that plaintiff's

economic damages be cut-off as of the date he voluntarily resigned his employment from Kings Dodge.

Respectfully submitted,

s/Curtis L. Cornett
Curtis L. Cornett (0062116)
Cors & Bassett, LLC
537 E. Pete Rose Way, Suite 400
Cincinnati, Ohio 45202
(513) 852-8226
clc@corsbassett.com
Trial Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2005, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to Paul H. Tobias, Esq. and David D. Kammer, Esq., attorneys for plaintiff Tobias, Kraus & Torchia, 911 Mercantile Library Building, 414 Walnut Street, Cincinnati, Ohio 45202.

s/Curtis L. Cornett
Curtis L. Cornett

257046