**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **RICK DEES** : | |
| : | CASE NO.  C-1-02-457 |
| Plaintiff : | Judge Dlott |
| : | |
| vs. : | |
| : | **PLAINTIFF'S MEMORANDUM** |
| **KENWOOD DEALER GROUP** : | **IN OPPOSITION TO** |
| : | **DEFENDANT'S MOTION IN** |
| and : | **LIMINE TO EXCLUDE** |
| : | **PLAINTIFF'S USE OF** |
| **KINGS DODGE** : | <u>**STATISTICAL EVIDENCE**</u> |
| : | |
| Defendants : | |

Defendants have moved to exclude from trial the evidence that of 8 managers at Kings Dodge **none** were African-American, and that of 88 managers in the Kenwood Dealer Group **none** were African-American.  This evidence is admissible as circumstantial evidence of discrimination, bolstered by other evidence to show that Plaintiff was discriminatorily denied a promotion.  Defendants' motion should be denied.

The numbers that Plaintiff plans to introduce are a form of circumstantial evidence which makes it more likely that race was a motivation for the failure to promote.  They are not statistics, as Defendants attempt to characterize them.  This evidence of zero African-American managers combined with statements indicating that Defendants knew their race numbers "look[ed] bad" are some additional circumstantial evidence of race discrimination.

This Court's Order denying summary judgment in part, which Defendant shies away from, sets forth the relevance of this evidence. (Doc. 23).  The Court stated:

> "However, the Court considers the evidence relevant at this stage because it is bolstered by the testimony of two witnesses. Pittman conceded that it was "common knowledge" that the Kenwood Group had no black managers, that it was a topic of discussion between him and the general manager of a different Kenwood Group dealership, and that there was a general feeling that "it looks bad." (Pittman Depo. at 69-71). Additionally, Liggett, Dees' former co-worker and the manager at another Kenwood Group dealership, testified in a sworn declaration that he knew of several qualified African-American salesmen in the Kenwood Group who were qualified for promotions but passed over while white employees were promoted. (Doc. #16, Liggett Decl.)."

(Doc. 23, p. 14). Thus, the Court recognizes that, in concert with this other evidence, the fact that Defendant had zero African-American managers is relevant and admissible.

Other courts that have considered similar issues concerning numbers of protected class individuals agree that the numbers are pieces of admissible circumstantial evidence. In Reeves v. Sanderson Plumbing, 530 U.S. 133, 68 U.S.L.W. 4480 (2000), the United States Supreme Court, in its analysis of the weighing of the evidence by the circuit court, noted that

> Moreover, the other evidence on which the court relied—that Caldwell and Oswalt were also cited for poor recordkeeping, and **that respondent employed many managers over age 50—although relevant, is certainly not dispositive**. See Furnco, 438 U.S. at 580 (evidence that employer's work force was racially balanced, while "not wholly irrelevant," was not "sufficient to conclusively demonstrate that [the employer's] actions were not discriminatorily motivated").

Reeves, 68 U.S.L.W. at 4485 (emphasis added). If the number of employees over 50 is relevant, certainly the fact that Defendants at bar had zero African-American managers is also relevant as circumstantial evidence.

This type of evidence is regularly presented in discrimination cases, often by Defendant. Defendants often attempt to argue that a particular action "could not be

2

discrimination because we promoted other African-American employees to similar positions (or we promoted some African-American employees)." While the Supreme Court found that the evidence was not dispositive of a claim, it was **relevant**. When coupled with Plaintiff's other evidence, a jury will be able to conclude that race motivated Defendants failure to promote.

Defendants seek to place to high of a burden on the introduction of this simple evidence. Defendants attempt to characterize this evidence as statistics. Defendants' argument is particularly inappropriate where Defendants had absolutely no African-American managers. This "inexorable zero" was discussed in <u>International Brotherhood of Teamsters v. U.S.</u>, 431 U.S. 324 (1977), where the United States Supreme Court held:

> In any event, fine tuning of the statistics could not have obscured the glaring absence of minority line drivers. As the Court of Appeals remarked, the company's inability to rebut **the inference of discrimination** came not from a misuse of statistics but **from "the inexorable zero**."

<u>Id</u>. at 342, n.23. Like the <u>Teamsters</u> scenario, this case involves "the inexorable zero", i.e. no African-American managers. With the "inexorable zero" the numbers speak for themselves.

Plaintiff's evidence that is contested in this motion is a simple number—zero. There is no reason why this number cannot be simply presented to the jury as one piece of circumstantial evidence. The court in <u>MacDissi v. Valmont Indust., Inc.</u>, 856 F.2d 1054 (8th Cir. 1988), provided a good explanation of the role of simple numbers in discrimination cases:

> "In this case, however, these overly formal statistical descriptions obscure the more obvious significance of the facts. Valmont chose to

> terminate the two oldest employees, ages 51 and 48, in a department in which all but one of the non-managerial employees remaining were 33 years old or younger. **This fact is certainly not conclusive evidence of discrimination in itself, but it is surely the kind of fact which could cause a reasonable trier of fact to raise an eyebrow**, and proceed to assess the employer's explanation of the outcome."

Id. at 1058 (emphasis added). Just as in MacDissi, the lack of any African-American managers at bar is the type of fact that, when combined with other evidence, could lead to the inference of discrimination.

Defendants argue that Plaintiff's evidence should be excluded. Defendant is focused on situations where a plaintiff attempted to prove his case (or make a prima facie case) primarily through the use of statistics or through the use of statistics alone. See e.g. Barnes v. Gen Corp., 896 F.2d 1457 (6th Cir. 1990). In such a situation arguably it may be necessary to provide an expert and jump through all the hoops to prove that your data is "statistically significant."

However, this is not the only use of "statistical" evidence. Plaintiff's can use raw data as circumstantial evidence. When raw data is used as circumstantial evidence, a plaintiff does not need expert testimony and does not need to meet the more stringent requirements for showing "statistical significance" as a statistician might understand that term. This is not a situation where an expert is presenting standard deviation figures or a chi square analysis to argue conclusively that the figures presented establish age discrimination. In this case the data is simply circumstantial evidence of the conditions at the car dealerships at the time of the failure to promote. It is one of many pieces of such evidence.

In Bevan v. Honeywell, 118 F3d 603 (8th Cir 1997), the Court upheld the admission of charts in an age discrimination case showing that after the corporate

4

reorganization all director-level positions were held by younger employees. Bevan was the only director over 45, in his supervisor's organization after it was reorganized, and he was the only one who was subsequently terminated. The court held the admission of the charts was proper. The court said that

- "Bevan was not attempting to make a claim of disparate impact through statistics."

- "The charts were compiled from information in Honeywell's personnel directory as one component of Bevan's **circumstantial proof** that Honeywell's proffered reason for the adverse employment decision was a pretext for age discrimination." (emphasis supplied)

- "Bevan's quantitative evidence [did] not need to reach the degree of certainty required of plaintiffs who present no proof of discrimination besides a statistical pattern."

- "Honeywell took full advantage [at trial] of its opportunity to impeach the validity, impact, and meaning of the information on those charts."

Bevan, 118 F.3d at 611-12.

The Second Circuit reached a similar result in Stratton v. Department for the Aging, 132 F.3d 869 (2nd Cir. 1997). In Stratton, the plaintiff sought to admit two of the Department of Aging's own organizational charts to which the plaintiff had added the ages of the individuals in the organization. These charts, as "marked up" by the plaintiff showed that the average age of the employees in the organization had dropped from 50.3 to 45.9 after the new Commissioner took over. The court found that the charts were reliable.

- The charts were "defendant's own documents—organizational charts prepared by DFTA in the ordinary course of business, as of two dates, one just before Mathai-Davis took over and one 14 months later.
- The information added to the charts was taken from Defendant's own records.
- "No expert was required."
- "Simple arithmetic was used—the ages of all the individuals were used to calculate an average age for each chart. There were no sophisticated statistical theories that needed explanation.
- Defendant could have made their own charts or called their own expert if they chose to do so.

Stratton, 132 F3d at 876-877.

Like the plaintiffs in these cases, Dees wishes only to present simple numbers—the inexorable zero—showing circumstantial evidence of race discrimination. The data was obtained from Defendants' own testimony. Defendant will have ample opportunity at trial to refute or cast doubt on the numbers.

The issue at bar is whether Plaintiff's numbers are *admissible*. Defendant cites Simpson v. Midland Ross for the proposition that the evidence of zero African-American managers is not admissible at trial. Simpson simply does not stand for the proposition that this type of numbers evidence at bar is **inadmissible**. Rather, the Simpson holding is based on the sufficiency of the evidence. At trial Simpson introduced evidence that the average age of workers in his section was 47.28 whereas the average age was 36.2, and 40.25 in two other sections. He also alleged that 76.5% of the employees who left Midland-Ross were over 40 and 23.5% of those who left were under 40.

6

Since the Plaintiff was relying on statistics as his primary evidence of age discrimination, it was important to determine whether the statistics offered were "statistically significant" in a scientific/mathematical sense:

> It is important to note the Simpson does not rely on any direct evidence of discrimination or any evidence that subjectively may be construed to indicate discrimination. Further, Midland-Ross introduced clear testimony that age did not in any way enter into the decision to discharge Simpson. Therefore, we must examine Simpson's statistical evidence to see if it was **sufficient** to rebut Midland-Ross' stated reasons for discharging him. . . . We conclude Simpson's statistical evidence, **even if arguably supporting an inference of discrimination to establish a prima facie case**, has insufficient probative value to support a jury verdict on the ultimate question of discrimination.

Simpson, 823 F2d at 943, 44 FEP at 422 (emphasis added). There is no hint that the evidence was **inadmissible or that it had no probative value at all** (indeed, the court assumed that the statistics made out a prima facie case). The Court simply wanted a showing of "statistical significance," since the statistics alone were to support the age discrimination finding. McCabe v. Champion International, 1990 WL 156104 *4 (6th Cir. 1990)(unreported) ("Although in Simpson we did recognize that a sample of seventeen employees was "suspect," that case is distinguishable. 823 F.2d at 942. **We twice noted in that case that the plaintiff had come forward with nothing other than statistical evidence. Id. at 933, 944. There was not other circumstantial evidence** such as discriminatory comments made by managers, or statistics relying on larger sample sizes, as in this case.") (emphasis added).

The case at bar is not like Simpson. Dees, like Plaintiff in McCabe, has other evidence of race discrimination and is not relying entirely on statistics to show

7

discrimination or a make a prima facie case.  Dees is simply supplementing his other evidence with numbers that are circumstantial evidence of discrimination.

Defendant also cites Smith v. Leggett Wire Co. as support for its proposition that the evidence of zero African-American supervisors cannot be admitted in this case.  In Smith, the court gave little analysis to Defendants' point about labor pool statistics.  Rather, though Defendant ignores it, the court stated that "the statistics relating to the percentage of minority supervisors at Adcom and other Leggett & Platt facilities were not relevant to the issue of whether Adcom **terminated** Smith because of his race." 220 F.3d at 761. Thus, the court found the promotion statistics irrelevant because they were offered in a termination case.

Defendant also cites Grano v. City of Columbus.  However, in Grano, the court was examining whether the plaintiff had made out a "pattern and practice" case through her statistics.  Naturally, proof of pattern and practice requires a heightened statistical showing.  In Grano, the plaintiff was not using the evidence as a piece of circumstantial evidence for her disparate treatment claim.  Thus, Grano is inapposite to the issue at bar.

Defendant also cites Wards Cove Packing Co. v. Antonio.  However, as Defendants admit, Wards Cove is a disparate impact, not disparate treatment, case. The case is completely inapposite because the prima facie case of disparate impact is demonstrated through a statistical showing alone.  This means that for disparate impact cases there is necessarily a higher showing required because, if the defendant cannot show its affirmative defense, the plaintiff will prevail on liability.  Clearly, disparate

8

impact requires a scientific showing of statistical significance. Thus, <u>Wards Cove</u> is inapposite.

Defendant cannot be heard to complain about the lack of supporting evidence for its "inexorable zero." Defendants knew that their racial numbers "look[ed] bad" but they did not do enough to solve their problems. Their inexorable zero is but one piece of circumstantial evidence that the jury may look at to determine if race motivated the failure to promote. Defendant is certainly welcome to attempt to cast doubt on Plaintiff's numbers. If Defendant believes Plaintiff's numbers are flawed or somehow mask what truly happened, Defendant can attempt to present its own numbers for the jury.

Defendants' motion must be denied.

                                                           Respectfully submitted,

                                                           s/ David D. Kammer
                                                           David D. Kammer—0061808
                                                           Paul H. Tobias – 0032415
                                                           Tobias, Kraus & Torchia
                                                           414 Walnut Street
                                                           Suite 911
                                                           Cincinnati, Ohio 45202
                                                           (513) 241-8137
                                                           (513) 241-7863 (fax)
                                                           davek@tktlaw.com
                                                           Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: Curtis L. Cornett, Cors & Bassett, LLC, 537 E. Pete Rose Way, Suite 400, Cincinnati, OH 45202.

                                                           s/ David D. Kammer
                                                           David D. Kammer—0061808